Kottmyer, J.
Introduction
Small World Learning Center, III, Inc., and Small World, Inc. (collectively “Small World”) brought this action against, among others, Daimler Chrysler Corporation (“Chrysler”), and Metro Freezer and Storage, LLC (“Metro”) seeking damages for negligent maintenance of property. Chrysler had leased the premises from its owners and, on June 25, 1996, subleased the entire premises to Metro. Metro subsequently sublet a portion of the premises to Small World.
Metro has filed a motion for summary judgment on Chrysler’s cross claim for indemnification. Chrysler also seeks summary judgment on its cross claims against Metro for breach of contract (Count I) and for indemnification (Count II).
Summary Judgment Record
The undisputed material facts are as follows. In 1981, Industrial Park Development Corp. and Natick Development Corp. (“the Owners”) purchased 5 Chrysler Road (“the Premises”) in the town of Natick from Chrysler. The sale involved a leaseback transaction wherein the Owners leased the entire premises back to Chrysler under a twenty-five year lease (“the Master Lease”) beginning on March 12, 1981.
Article Sixth of the Master Lease states that Chrysler “assumes the sole responsibility for the condition, operation, maintenance and management of the Leased Premises and the Lessor shall not be required to furnish any facilities or services or make any repairs or alterations thereto.” Article Eighth of the Master Lease states:
Lessee shall take good care of the Leased Premises, and keep the same and all parts thereof, including, without limitation on the generality thereof, the roof, foundations of all Improvements and appurtenances thereto, together with any and all alterations, additions and improvements therein or thereto, in good order and condition, and shall, at the lessee’s expense, promptly make all needed repairs and replacements, structural or otherwise, in and to any Improvements now or hereafter erected upon the Leased Premises, including vaults, sidewalks, curbs, water, sewer and gas connections, pipes and mains, and all other fixtures, machines and equipment now or hereafter belonging to or connected with the Leased Premises or used in the operation of the Improvements.
In Article Eighteenth, Chrysler also agreed to indemnify the Owners for any costs and expenses they incurred due to or arising out of a) “any breach, violation or non-performance of any covenant, condition or agreementin [the Master] Lease” and/or b) “any damage to person or property occasioned by Lessee's use and occupancy of the Leased Premises or to any use or occupancy which the Lessee may permit or suffer to be made of the Leased Premises.”[1]
In 1995. the Owners brought an action against Chrysler to enforce Chrysler’s repair obligations under the Master Lease. The action was settled by mutual agreement. On June 25, 1996 Chrysler subleased the entire premises to Metro (“the Sublease”). Chrysler agreed to complete certain repairs listed on Exhibit B to the Sublease. Under the Sublease, Metro is required to make monthly rental payments to Chrysler in accordance with a schedule attached to the Sublease as Exhibit D (¶7).[2] Metro paid rent for the months of April 1997 through September 1997, but, due to inadvertence, did not pay at the increased rate effective on April 1, 1997. The shortage totaled $35,604.26. In December 1997, Metro paid $4,500 toward the arrear *85 age, but it has failed to pay the balance. Metro gave Chrysler a check in the amount of $29,742.67 for the September 1998 rent. Metro put a stop payment on this check when Chrysler misplaced it. Chrysler eventually found the lost check and returned it to Metro. Metro has failed, however, to replace the check. The total amount Metro owes Chrysler for past due rent is $60,846.93.
In ¶13, the Sublease provides that, except as specifically provided to the contrary in the sublease, Metro “shall observe and perform, for the benefit of (Chrysler), each and every term, covenant, condition and agreement of the Master Lease .. . that [Chrysler] is required to observe or perform with respect to the Premises as tenant under the Master Lease.” Except as specifically provided to the contrary in the Sublease, each of the terms, covenants, conditions and agreements contained in the Master Lease which Chrysler is required to observe or perform is incorporated in the Sublease by reference and deemed to constitute terms, covenants, conditions and agreements which Metro is required to observe or perform. (1113.)
The Sublease required Metro to obtain Chrysler’s prior written approval for any sublease of all or a portion of the Premises, as well as any additional approval that may be required under the terms of the Master Lease. (¶14.) Metro accepted the Premises in its “AS IS” condition subject to Chrysler's completion of certain repairs listed on Exhibit B to the Sublease and any other repairs Chrysler might be required to make as a result of the Owner’s legal action. (¶2.)
Metro subleased a portion of the premises to Small World pursuant to leases dated October 18, 1996 and November 21, 1996 (the “Small World Sublease”). Metro did not obtain Chrysler’s written approval of the Sublease.
Chrysler argues that because the Sublease does not specifically provide to the contrary (1) Chrysler’s maintenance and repair obligations under the Master Lease are incorporated in the Sublease as obligations expressly assumed by Metro; and (2) the indemnification provision in the Master Lease is incorporated in the Sublease and requires Metro to indemnify Chrysler for any and all costs and expenses Chrysler incurred in connection with Small World’s claims, including amounts expended pursuant to its obligation to indemnify the Owners.
In its Amended Complaint, Small World asserted claims against Metro, Chrysler and the Owners for negligent maintenance and repair. (Count Fourteen.) Small World also sought a declaratory judgment that Chrysler and the Owners were estopped from challenging the lawfulness of Small World’s tenancy or renovations. (Counts Ten[3] and Thirteen.) Small World also brought claims against Chrysler for violations of Mass. Gen. Laws c. 93A (Count Twelve) and tortious interference with contractual relationships. (Count Eleven.) Both Chrysler and the Owners settled with Small World.
Chrysler asserts that it incurred costs and expenses in the amount of $162,582.60 in connection with the defense of Small World’s claims. Of this amount, Chrysler paid $60,264.30 to the Owners pursuant to the indemnification provision in the Master Lease. Chrysler has demanded that Metro indemnify it for all of the costs and expenses Chrysler has incurred, but Metro has refused.
Discussion
A. Count I (Breach of Contract)
Chrysler alleges that Metro breached the Sublease by failing to pay the total amount due from June through September 1997, and rent for September of 1998 and seeks damages in the amount of $60,846.93. Metro does not dispute its failure to pay, but has adduced evidence that Chrysler failed to complete certain repairs listed on Exhibit B to the Sublease and that Metro expended in excess of $65,000 to complete the work. Although Metro has not asserted a claim for breach of contract against Chrysler, it argues that it was and is entitled to offset the cost of repairs against the rent.
The Sublease provides in ¶7 that Metro is responsible to pay monthly rent "without any deductions or setoffs whatsoever.” Relying on Kobayashi v. Orion Ventures, 42 Mass.App.Ct. 492, 501, rev. denied, 425 Mass. 1102 (1997), Metro correctly argues that a commercial tenant may not withhold rent as an offset if the lease agreement provides that the tenant is not entitled to offset its rent obligation.
Metro also disputes the amount of rent owed, arguing that because Chrysler did not complete the repair work, it had no obligation to pay the base rent. But the summary judgment record establishes that Metro began to pay the “base rent” in April of 1997, and Metro has acknowledged via affidavit that the rent specified in the escalation clause was the applicable rent during the months in question. (Lewis Aff. ¶12, 13.)
B. Count II — Indemnification
The parties have filed cross-motions for summary judgment on Count II of Chrysler’s cross claim for indemnification. Chrysler argues that Metro is obligated to indemnify it for all attorneys fees and costs it has incurred in connection with this matter, including costs and expenses it incurred pursuant to its agreement to indemnify the Owners.
Pursuant to the terms of the Sublease, which incorporates Article Eighteenth of the Master Lease, Metro is required to indemnify Chrysler for costs and expenses incurred by Chrysler due to or arising out of any damages to any use or occupancy of Metro’s Subleasee. Amoco Oil Co., Inc. v. Buckley Heating, 22 Mass.App.Ct. 973 (1986).[4] All of Small World’s negligence claims arose out of alleged damages to Small *86 World’s use and occupancy of the premises. It is true, as contended by Metro, that Chrysler was not liable to Small World as a matter of law because Chrysler had subleased the entire premises to Metro and Metro had undertaken the obligation to keep the premises in repair.[5] But the fact that Small World’s negligence claim against Chrysler lacked merit had no effect on Metro’s contractual obligation to indemnify Chrysler for costs and expenses incurred in defending a claim arising out of alleged damage to Small World’s use and occupancy of the premises.
Metro’s obligation to indemnify Chrysler extends to costs and expenses Chrysler incurred pursuant to its obligation to indemnify the Owners in connection with Small World’s negligence claim against the Owners. This latter conclusion is based on the breadth of the indemnification clause and Metro’s express agreement that terms, conditions, covenants and agreements of the Master Lease are incorporated in the Sublease and deemed to constitute agreements which Metro is required to observe and perform.
Metro contends that Small World’s declaratory judgment, G.L.c. 93A and contractual interference claims are not within the scope of the indemnification clause because they arose out of Chrysler’s and the Owner’s challenges to the lawfulness of Small World’s tenancy. I agree that these claims are not within the scope of clause (b) of the indemnification clause as they neither arose out of nor were due to damage to Small World’s use and occupancy of the premises. Chrysler counters that the claims arose out of Metro’s breach of the contractual provisions requiring written approval of any sublease and are therefore covered by clause (a) of the indemnification clause. But Metro has adduced evidence creating a material question of fact as to whether Chrysler waived the requirements of written notice and approval. If the requirements were waived, the claims in question do not arise out of any breach or failure to perform by Metro.
Accordingly, Chrysler’s motion for summary judgment on Count II of its cross claim is allowed in part. Partial summary judgment shall enter in favor of Chrysler that Metro is obligated to indemnify Chrysler for reasonable costs and expenses incurred by Chrysler in connection with Small World’s negligence claims against Chrysler and the Owners. There are disputed fact issues as to whether Metro is obligated to indemnify Chrysler for fees and expenses incurred in connection with claims asserted by Small World against Chrysler and the Owners in Counts IX, X,[6] XI, XII and XIII which arise out of their challenge to the lawfulness of Small World’s tenancy. Metro also correctly points out that the reasonableness of those costs and expenses which are recoverable is a question of fact. Metro’s cross-motion for summary judgment on Count II of Chrysler’s cross claim is therefore denied in part.
Conclusion
For the reasons stated herein, Chrysler’s motion for summary judgment on Count I of its cross claim against Metro alleging breach of contract is allowed. Judgment shall enter in favor of Chrysler in the amount of $60,846.93, plus interest and costs. Chrysler’s motion for summary judgment on Count II seeking indemnification is allowed in part and denied in part. It is allowed to the extent that Chrysler seeks a determination that Metro is liable to it for costs and expenses it incurred as a result of Small World’s negligence claims against Chrysler and the Owners. There are disputed fact issues to whether Metro is obliged to indemnify Chrysler for costs and expenses incurred by Chrysler in connection with Small World’s remaining claims against Chrysler and the Owners and as to the reasonable amount of those costs and expenses which are recoverable.

The relevant text of the Indemnification provision is as follows:
The Lessee shall not do or permit any act or thing upon the Lease Premises which may subject the lessor to any liability by reason of any illegal business or conduct upon the Leased Premises, or by reason of any violation of law or of any legal requirement of public authority, but shall exercise such control over the Leased Premises as to fully protect the Lessor. Notwithstanding that joint or concurrent liability may be imposed upon the Lessor by statute, ordinance, rule, regulation or order, the Lessee shall indemnify and hold harmless the Lessor from and against any and all liability, fines, suits, claims, demands and actions, and costs and expenses of any kind or nature by anyone whosoever, due to or arising out of (a) any breach, violation or non-performance of any covenant, condition or agreement in this lease set forth and contained on the part of the Lessee to be fulfilled, kept, observed and performed, and/or (b) any damage to person or property occasioned by Lessee’s use and occupancy of the Leased Premises or to any use or occupancy which the Lessee may permit or suffer to be made of the Leased Premises and/or (c) any injury to person or persons . . .

In relevant part, the Schedule provides:
Commencement Date through March 31, 1997, $3.50 per square foot
April 1, 1997 through March 31, 1998, $3.75 per square foot
April 1, 1998 through March 31, 1999, $4.00 per square foot

Count Ten is misnumbered in the Amended Complaint as a second Count Nine.

Chrysler misquotes this provision in its memoranda omitting the word "to.” See Chrysler’s Memorandum in Support of Motion for Summary Judgment as p. 10 and its Opposition to Cross-Motion for Summary Judgment at pp. 6-7.

For this reason, G.L.c. 186, §15 has no application to this case.

Count X is misnumbered as a second Count IX.